UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

OCT 0 6 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Patsy Lee Martens
George Allen Martens
Jacob-Franz: Dyck, Trustee
  Of Netanya Trust

    Relator (Plaintiff)

      V.

Case # 1:06CV01632

RUSSELL STEELE
ACTING AS JUDGE FOR ADAIR CO.
CIRCUIT COURT FOR MISSOURI
  JOHN DOE 1-25
  JANE DOE 1-25

**TRIAL BY JURY
DEMANDED Rule 38 FRCP**

    RESPONDENT (DEFENDANT)

---

## AMENDED COMPLAINT RULE 60 (b)
### THE WRONG AMENDED DRAFT WAS GIVEN TO THE TYPIST
### QUO WARRANTO FOR BREACH OF OATH

---

### Affidavit

We, Patsy Lee Martens, George Allen Martens and Jacob-Franz: Dyck, are

competent to testify and make this affidavit as a follower of the Messiah, In the laws

of the Almighty Supreme Creator, first and foremost and the laws of Man when

they are not in conflict (Leviticus 18:3,4). Pursuant to Matthew 5:33-37 and James

5:12 [C.I.R. v. Ferguson USCA 90-1430], let our yeas be yeas and our nays be nays,

as supported by your Federal law 97-280, 96 Stat. 1211.  We have personal

knowledge of the matters stated herein and hereby asseverate understanding the

liabilities presented in your <u>Briscoe v. Lahue 46 U.S. 325.</u>

1

### Identifying Parties

**Relators: Patsy Lee Martens and George Allen Martens, certificate holders and managers of Trust (a farm in Adair County Missouri, under common law, contract, irrevocable pure trust).**

**Jacob-Franz: Dyck, Trustee of Netanya Trust**

**Respondent: RUSSELL STEELE, Circuit judge of the Second Circuit, Adair County Missouri.**

### Jurisdiction

Comes the Relators, Patsy Lee Martens, George Allen Martens and Jacob-Franz: Dyck, all natural born free adults, to this honorable court sitting in Article III, Sec. 2 capacity under Federal Rules of Civil Procedures, Rule 9 (b) and Rule 60 (b) for the discovery of the law and facts and upon the discovery of a scheme to defraud the Relators.

Under Federal rules of Civil Procedures Rule 9(b) that fraud vitiated against contract of action ab initio. The jurisdiction of this court is invoked under Title 28 United States Code Section 1331 and 1332, this being an action arising under the Constitution of the United States and of the State of Missouri, Bill of Rights, Laws of the United States and Foreign Treaties of the United States. Deprivation under Color of State Laws, Statutes, ordinance, regulation, custom, usage of a right, privilege, and immunity secured to Relators by the Articles of the Bill of Rights.

Relators pleadings set the jurisdiction of this cause in the jurisdiction of the American flag, Title 4 U.S.C. Sec. 1, of the united States of America. When Relators captured Adair County Court, State of Missouri, now is within the

2

jurisdiction of a Federal Court, as all courts are United States Federal Courts because of oath or affirmation to the United States Constitution and the Title 4 U.S.C. Sec. 1 American flag.  Under the law of the Flag the United States Federal Flag, Title 4 U.S.C. Sec. 1 and the Oath of Office makes all Courts Federal Courts.

The Relators also invoke treaty jurisdiction to this court for the following treaties.

**INTERNATIONAL COVENANT ON CIVIL AND POLITICAL RIGHTS**
U.N.T.S. No. 14668, VOL 999 (1976), P. 171;
S4783 (April 2, 1992); 58 Fed. Reg.
45934-45942, No. 167, Aug. 31, 1993

**Part II**

**Article 2**

1.  Each State Party to the present Covenant undertakes to respect and ensure to all individuals within its territory and subject to its jurisdiction the rights recognized in the present Covenant, without distinction of any kind, such as race, colour, sex, language, religion, political or other opinion, national or social origin, property, birth or other status.

3.  Each State Party to the present Covenant undertakes:

(a) To ensure that any person whose rights or freedoms as herein recognized are violated shall have an effective remedy, notwithstanding that the violation has been committed by persons acting in an official capacity;

(b) To ensure that any person claiming such a remedy shall have his right thereto determined by competent judicial, administrative or legislative

authorities, Or by any other competent authority provided for by the legal

system of the State, and to develop the possibilities of judicial remedy;

(c) To ensure that the competent authorities shall enforce such remedies

when granted.

## Part III

### Article 16

Everyone shall have the right to recognition everywhere as a person before the law.

### Article 17

1. No one shall be subjected to arbitrary or unlawful interference with his privacy,

family, home or correspondence, nor to unlawful attacks on his honour and

reputation.

2. Everyone has the right to the protection of the law against such interference or

attacks.

### Article 18

1. Everyone shall have the right to freedom of thought, conscience and religion.

This right shall include freedom to have or to adopt a religion or belief of his choice,

and freedom, either individually or in community with others and in public or

private, to manifest his religion or belief in worship, observance, practice and

teaching.

2. No one shall be subject to coercion, which would impair his freedom to have or to

adopt a religion or belief of his choice.

3. Freedom to manifest one's religion or beliefs may be subject only to such limitations as are prescribed by law and are necessary to protect public safety, order, health, or morals or the fundamental rights and freedoms of others.

4. The States Parties to the present Covenant undertake to have respect for the liberty of parents and, when applicable, legal guardians to ensure the religious and moral education of their children in conformity with their own convictions.

## Article 19

1. Everyone shall have the right to hold opinions without interference.

2. Everyone shall have the right to freedom of expression; this right shall include freedom to seek, receive and impart information and ideas of all kinds, regardless of frontiers, either orally, in writing or in print, in the form of art, or through any other media of his choice.

3. (a) For respect of the rights or reputations of others;

## Article 20

2. Any advocacy of national, racial or religious hatred that constitutes incitement to discrimination, hostility shall be prohibited by law.

## Article 21

The right of peaceful assembly shall be recognized.  No restrictions may be placed

on the exercise of this right other than those imposed in conformity with the law and which are necessary in a democratic society in the interests of national security or public safety, public order (ordre public), the protection of public health or morals or the protection of the rights and freedoms of others.

### Article 22

1. Everyone shall have the right to freedom of association with others, including the right to form and join trade unions for the protection of his interests.

2. No restrictions may be placed on the exercise of this right other than those which are prescribed by law and which are necessary in a democratic society in the interests of national security or public safety, public order (ordre public), the protection of public health or morals or the protection of the rights and freedoms of others. This article shall not prevent the imposition of lawful restrictions on members of the armed forces and of the police in their exercise of this right.

3. Nothing in this article shall authorize States Parties to the International Labour Organization Convention of 1948 concerning Freedom of Association and Protection of the Right to Organize, to take legislative measures which would prejudice, or to apply the law in such a manner as to prejudice, the guarantees provided for in that Convention.

### Article 23

1. The family is the natural and fundamental group unit of society and is entitled to

protection by society and the State.

## Article 26

All persons are equal before the law and are entitled without any discrimination to the equal protection of the law.  In this respect, the law shall prohibit any discrimination and guarantee to all persons equal and effective protection against discrimination on any ground such as race, colour, sex, language, religion, political or other opinion, national or social origin, property, birth or other status.

## Article 27

In those States in which ethnic, religious or linguistic minorities exist persons belonging to such minorities shall not be denied the right, in community with the other members of their group, to enjoy their own culture, to profess and practice their own religion, or to use their own language.

## INTERNATIONAL CONVENTION ON THE ELIMINATION OF ALL FORMS OF RACIAL DISCRIMINATION

| | |
|---|---|
| Part I | U.N.T.S. No. 9464 |
| | Senate advice and consent: |
| Article I | 140 Cong. Rec. S7634 (June 24, 1994) |

7

1. In this Convention, the term "racial discrimination" shall mean any distinction, exclusion, restriction or preference based on race, colour, descent, or national or ethnic origin which has the purpose or effect of nullifying or impairing the recognition, enjoyment or exercise, on an equal footing, of human rights and fundamental freedoms in the political economic, social, cultural or any other field of public life.

2. This Convention shall not apply to distinctions, exclusions, restrictions or preferences made by a State Party to this Convention between citizens and non-citizens.

4. Special measures taken for the sole purpose of securing adequate advancement of certain racial or ethnic groups or individuals requiring such protection as may be necessary in order to ensure such group individuals equal enjoyment or exercise of human rights and fundamental freedoms shall not be deemed racial discrimination, provided, however, that such measures do not, as a consequence, lead to the maintenance of separate rights for different racial groups and that they shall not be continued after the objectives for which they were taken have been achieved.

## Article 2

(a) Each State Party undertakes to engage in no act or practice of racial discrimination against persons or institutions, national and local, shall act in conformity with this obligation;

(b) Each State Party undertakes to sponsor, defend or support racial

discrimination by any persons or organizations;

(c) Each State Party shall take effective measures to review governmental, national and local policies, and to amend, rescind or nullify any laws and regulations which have the effect of creating or perpetuating racial discrimination wherever it exists.

(d) Each State Party shall prohibit and bring to an end, by all appropriate, integrationist multi-racial organizations and movements and other means of eliminating barriers between races, and to discourage anything, which tends to strengthen racial division.

2. States Parties shall, when the circumstances so warrant, take, in the social, economic, cultural and other fields, special and concrete measures to ensure the adequate development and protection of certain racial groups or individuals belonging to them, for the purpose of guaranteeing them the full and equal enjoyment of human rights and fundamental freedoms.  These measures shall in no case entail as a consequence the maintenance of unequal or separate rights for different racial groups after the objectives for which they were taken have been achieved.

**Article 3**

States Parties particularly condemn racial segregation and apartheid and undertake to prevent, prohibit and eradicate all practices of this nature in territories under their jurisdiction.

## Article 4

(a) Shall declare an offence punishable by law all dissemination of ideas based on racial superiority or hatred, incitement to racial discrimination, as well as all acts of violence or incitement to such acts against any race or group of persons of another colour or ethnic origin, and also the provision of any assistance to racist activities, including the financing thereof;

(b) Shall declare illegal and prohibit organizations, and also organized and all other propaganda activities, which promote and incite racial discrimination, and shall recognize participation in such organizations or activities as an offence punishable by law;

(c) Shall not permit public authorities or public institutions, national or local, to promote or incite racial discrimination.

## Article 5

(a) The right to equal treatment before the tribunals and all other organs administering justice;

(b) The right to security of person and protection by the State against violence or bodily harm, whether inflicted by government officials or by any individual, group or institution;

(c) Political rights, in particular the rights to participate in elections–to vote and to stand for election–on the basis of universal and equal suffrage, to take part in the Government as access to public service;

(d) Other civil rights, in particular;

    (i)  The <u>right</u> to freedom of movement and residence within the border of the State;

    (ii) The <u>right</u> to leave any country, including one's own, and to return to one's country;

    (iii) The <u>right</u> to nationality;

    (iv) The <u>right</u> to marriage and choice of spouse;

(e) Economic, social and cultural rights, in particular;

    (i)  The <u>rights</u> to work, to free choice of employment, to just and favorable conditions of work, to protection against unemployment, to equal pay for equal work, to just and favorable renumeration.


## Article 6


States Parties shall assure to everyone within their jurisdiction effective protection and remedies, through the competent national tribunals and other State institutions, against any acts of racial discrimination which violate his human rights and fundamental freedoms contrary to this Convention, as well as the right to seek from such tribunals just and adequate reparation or satisfaction for any damage suffered as a result of such discrimination.


## CONVENTION AGAINST TORTURE
## AND OTHER CRUEL, INHUMAN OR DEGRADING TREATMENT OR PUNISHMENT

Part I                          UN General Assembly RES 39/46,
                                Annex

                                Senate advice and consent:

            Article I           136 Cong. Rec. S17491-2 (October
            2,1990)

1. For the purposes of this Convention, torture means any act by which severe pain
or suffering, whether physical or mental, is intentionally inflicted of a person for
such purposes as obtaining from him or a third person information or a confession,
punishing him for an act he or a third person has committed or is suspected of
having committed, or intimidation or coercing him or a third person, or for any
reason based on discrimination of any kind, when such pain or suffering is inflicted
by or at the instigation of or with the consent or acquiescence of a public official or
other person acting in an official capacity. It does not include pain or suffering
arising only from inherent in or incidental to lawful sanctions.

## Article 2

1. Each State Party shall take effective legislative, administrative, judicial or other
measures to prevent acts of torture in any territory under its jurisdiction.
2. No exceptional circumstances whatsoever, whether a state of war or a threat or
war, internal political instability or any other public emergency, may be invoked as
a justification of torture.
3. An order from a superior officer or a public authority may not be invoked as a
justification of torture.

## Article 3

1.  No State Party shall expel, return ("refouler") or extradite a person to another state where there are substantial grounds for believing that he would be in danger of being subjected to torture.

2.  For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights.

## Article 4

1.  Each State Party shall ensure that all acts of torture are offences under its criminal law.  The same shall apply to an attempt to commit torture and to an act by any person, which constitutes complicity or participation in torture.

2.  Each State Party shall make these offences punishable by appropriate penalties, which take into account their grave nature.

## Article 5

1.  Each State Party shall take such measures as may be necessary to establish its jurisdiction over the offences referred to in Article 4 in the following cases:

    (b) When the alleged offender is a national of that State;

    (c) When the victim is a national of that State if that State considers it

appropriate.

3. This Convention does not exclude any criminal jurisdiction exercised in accordance with internal law.

## Article 6

1. Upon being satisfied, after an examination of information available to it, that the circumstances so warrant, any State Party in whose territory a person alleged to have committed any offence referred to in Article 4 is present, shall take him into custody or take other legal measures to ensure his presence. The custody and other legal measures shall be as provided in the law of that State but may be continued only for such time as is necessary to enable any criminal or extradition proceedings to be instituted.

2. Such State shall immediately make a preliminary inquiry into the facts.

3. Any person in custody pursuant to paragraph 1 of this article shall be assisted in communicating immediately with the nearest appropriate representative of the State of which he is a national, or, if he is a stateless person, to the representative of the State where he usually resides.

## Article 13

Each State Party shall ensure that any individual who alleges he has been subjected to torture in any territory under its jurisdiction has the right to complain to and to

have his case promptly and impartially examined by its competent authorities. Steps shall be taken to ensure that the complainant and witnesses are protected against all ill treatment or intimidation as a consequence of his complaint or any evidence given.

## Article 14

1. Each State Party shall ensure in its legal system that the victim of an act of torture obtains redress and has an enforceable to fair and adequate compensation including the means for as full rehabilitation as possible. In the event of the death of the victim as a result of an act of torture, his dependents shall be entitled to compensation.

## Article 15

Each State Party shall ensure that any statement which is established to have been made as a result of torture shall not be invoked as evidence in any proceedings, except against a person accused of torture as evidence that the statement was made.

## Article 16

Each State Party shall undertake to prevent in any territory under its jurisdiction other acts of cruel, inhuman or degrading treatment or punishment which do not

amount to torture as defined in Article 1, when such acts are committed by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.  In particular, the obligations contained in Articles 10, 11, 12, and 13 shall apply with the substitution for references to torture or references to other forms of cruel, inhuman or degrading treatment or punishment.

2.  The provisions of this Convention are without prejudice to the provisions of any other international instrument or national law, which prohibit cruel, inhuman or degrading treatment or punishment or which relate to extradition or expulsion.

## Part II

## Article 17

1.  There shall be established a Committee against Torture (hereinafter referred to as the Committee), which shall carry out the functions hereinafter, provided.  The Committee shall consist of 10 experts of high moral standing and recognized competence in the field of human rights, who shall serve in their personal capacity. The experts shall be elected by the States Parties, consideration being given to equitable geographical distribution and to the usefulness of the participation of some persons having legal experience.

## Article 19

1.  The States Parties shall submit to the Committee, through the Secretary-

General of the United Nations, reports on the measures they have taken to give effect to their undertakings under this Convention, within one year after the entry into force of this Convention for the State Party concerned. Thereafter the States Parties shall submit supplementary reports every four years on any new measures taken, and such other reports as the Committee may request.

2. The Secretary-General shall transmit the reports to all States Parties.

## CONVENTION ON THE PREVENTION AND PUNISHMENT OF THE CRIME OF GENOCIDE

Adopted by Resolution 260 (III) A
Of the United Nations General
Assembly on December 9, 1948.

### Article 2

In the present Convention, Genocide means any of the following acts committed with intent to destroy, in whole or in part, a national, ethnical, racial or religious group, as such:

(b) Causing serious bodily or mental harm to members of the group;

(c) Deliberately inflicting on the group conditions of life calculated to bring about  its physical destruction in whole or in part;

## Article 3

The following Acts shall be punishable:

 (a) Genocide;

 (b) Conspiracy to commit genocide;

 (c) Direct and public incitement to commit genocide;

 (d) Attempt to commit genocide;

 (d) Complicity in genocide.

## Article 4

Persons committing genocide or any of the other acts enumerated in Article 3 shall be punished, whether they are constitutionally responsible rulers, public officials or private individuals.

## Article 5

The Contracting Parties undertake to enact, in accordance with their respective Constitutions, the necessary legislation to give effect to the provisions of the present Convention and, in particular, to provide effective penalties for persons guilty of genocide or any of the other acts enumerated in Article 3.

## Article 7

Genocide and the other acts enumerated in Article 3 shall not be considered as

political crimes for the purpose of extradition.

### Article 9

Disputes between the Contracting Parties relating to the interpretation, application or fulfillment of the present Convention, including those relating to the responsibility of a State for genocide or any of the other acts enumerated in Article 3, shall be submitted to the International Court of Justice at the request of any of the parties to the dispute.

## GENOCIDE CONVENTION IMPLEMENTATION ACT OF 1988

### 18 U.S. Code Sec. 1091-1093

### SECTION 1. SHORT TITLE.

This Act may be cited as the "Genocide Convention Implementation Act of 1988"

### SECTION 2. TITLE 18 AMENDMENTS.

(a) IN GENERAL.-Title 18, United States Code, is amended by inserting after Chapter 50 the following:

### "CHAPTER 50A–GENOCIDE"

**Sec. 1091.  Genocide**

"(a) BASIC OFFENSE.–Whoever, whether in time of peace or in time of war, in a circumstance described in subsection (d) of this section and with the specific intent to destroy, in whole or in substantial part, a national, ethnic, racial, or religious group as such–

> "(1) kills a member of that group;
>
> "(2) causes serious bodily injury to a member of that group;
>
> "(3) causes the permanent impairment of the mental faculties of a member of the group through drugs, torture, or similar techniques;
>
> "(4) subjects the group to conditions of life that are intended to cause physical destruction of the group in whole or in part;
>
> "(5) imposes measures intended to prevent births within the group; or
>
> "(6) transfers by force a child of the group to another group; or attempts to do so, shall be punished as provided in subsection (b) of this section.

"(b) PUNISHMENT FOR BASIC OFFENSE.–The punishment for an offense under subsection (a) of this section is–

> "(1) in the case of an offense under subsection (a)(1), a fine of not more than $1,000,000 and imprisonment for life; and
>
> "(2) a fine of not more than $1,000,000 or imprisonment for not more than 20 years, or both, in any other case.

"(c) INCITEMENT OFFENSE.–Whoever in a circumstance described in subsection

"(d) of this section directly and publicly incites another to violate subsection (a) of this section shall be fined not more than $500,000 or imprisoned not more than five years, or both.

"(d) REQUIRED CIRCUMSTANCE FOR OFFENSES.–The circumstance referred to in subsections (a) and (c) of this section is that–

    "(1) the offense is committed within the United States; or

    "(2) the alleged offender is a national of the United States (as defined in section 101 of the Immigration and Nationality Act (8 U.S.C. 1101)).

"(e) NON-APPLICABILITY OF CERTAIN LIMITATIONS.– Notwithstanding section 3282 of this title, in the case of an offense under subsection (a)(1) of this section, an indictment may be found or an information instituted at any time without limitation.

Sec. 1092. Relation to other remedies

"Nothing in this chapter–

    "(1) precludes the application of State or local laws on the same subject; or

    "(2) creates any Federal civil remedy with respect to the conduct prohibited by this chapter.

Sec. 1093. Definitions

"As used in this chapter–

    "(1) the term 'child' means an individual who has not attained the age of 18 years;

    "(2) the term 'ethnic group' means a set of individuals whose identity as such is distinctive in terms of common cultural traditions or heritage;

    "(3) the terms 'incites' means urges another to engage imminently in conduct in circumstances under which there is a substantial likelihood of imminently causing such conduct;

    "(4) the term 'national group' means a set of individuals whose identity as such is distinctive in terms of nationality or national origin;

    "(5) the term 'racial group' means a set of individuals whose identity as such is distinctive in terms of physical characteristics or biological descent;

    "(6) the term 'religious group' means a set of individuals whose identity as such is distinctive in terms of common religious creed, beliefs, doctrines, practices, or rituals; and

    "(7) the term 'substantial part' means a part of a group of such numerical significance that the destruction or loss of that part would cause the destruction of the group as a viable entity within the nation of which such group is part."

    (b) CLERICAL AMENDMENT.–The table of chapters at the beginning of Part I of Title 18, the United States Code, is amended by inserting after the item

relating to chapter 50 the following new item:

"50A.

Genocide.............................................................................................................1091"

.

      This court _must_ take jurisdiction of those issues as stated herein-by virtue that Congress enacted legislation for remedies of such violation in U.S.C. 50 (a) Sec. 1091-1092.

Case Law

      These case law presentations are not meant for this Judge to answer or be aware of; It is for RUSSELL STEELE to answer:  By what authority do you, RUSSELL STEELE, consider yourself above the law and Constitutions, State and Federal?  These case laws spend over two centuries of legal scholars formulating and molding like a potter of clay until he (potter) produces the desired artifact, like Mamma Charlie [extremely ornate Native American potteres].

      No man in this country is so high that he is above the law.  No officer of the law may set that law at defiance with impunity.  All the officers of the Government, from the highest to the lowest, are creatures of the law, and area bound to obey it. It is the only supreme power in our system of government, and every man, who, by accepting office, participates in its functions, is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives.  See INTERNATIONAL POSTAL SUPPLY COMPANY v. BRUCE (05/31/04) 194 U.S. 601, 48 L. Ed. 1134, 24 S. Ct. at page

23

609. But immunity from suit is a high attribute of sovereignty - a prerogative of the state itself-which cannot be availed of by public agents when sued for their own torts.

The Eleventh Amendment was not intended to afford them freedom from liability in any case where, under color of their office, they have injured one of the State's citizens. To grant them such immunity would be to create a privileged class free from liability from wrongs inflicted or injuries threatened. Public agents must be liable to the law, unless they are to be put above the law. See OLD COLONY TRUST COMPANY v. CITY SEATTLE ET AL. (06/01/26) 271 U.S. 426, 46 S. Ct. 552, 70 L. Ed. at page 431.

No officer of the law may set that law at defiance with impunity. See United States v. Lee, 106, U.S. 196, 220 and Burton v. United States, 202, U.S. 344. The objection is that, as the real party cannot be brought before the court, a suit cannot be sustained against the agents of that party; and cases have been cited to show that a court of chancery will not make a decree unless all those who are substantially interested be made parties to the suit. This is certainly true where it is in the power of the plaintiff to make them parties; but if the person who is the real principal, the person who is the true source of the mischief, by whose power and for whose advantage it is done, be himself above the law, be exempt from all judicial process, it would be subversive of the best established principles to say that the laws could not afford the same remedies against the agent employed in doing the wrong which they would afford against him could his principal be joined in the suit. See IN RE AYERS; IN RE SCOTT; IN RE MCCABE. 123 U.S. 443, 31 L. Ed. 216, 8 S. Ct. at

page 512.

The liability of state judicial officials and all official participants in state judicial proceedings under C2 A7 2 was explicitly and repeatedly affirmed. The notion of immunity for such officials was thoroughly discredited. The senate sponsor of the Act deemed the idea "akin to the maxim of the English law that the King can do no wrong. It places officials above the law. It is the very doctrine out of which the rebellion [the Civil War] was hatched." Cong. Globe, 39th Cong., 1st Sess., 1758 (1866) (Sen. Trumbull). Thus, C2 A7 2 was "aimed directly at the State judiciary." Id., at 1155 (Rep. Eldridge). See also id., at 1778 (Sen. Johnson, member of the Senate Judiciary Committee).

There was "no difference in the principle involved" between a civil remedy and a criminal sanction. Ibid. See BRISCOE ET AL. v. LAHUE ET AL. (03/07/83) 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96, 51 U.S.L.W. at page 359. The Court in Yates v. Village of Hoffman Estates, Illinois, 209 F. Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function....it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

When a judge acts as a trespasser of the law, when a judge does not follow the law, the judge loses subject-matter jurisdiction and the judges' orders are void, of no legal force or effect. The U.S. Supreme Court, in Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 1687 (1974) stated that when a state officer acts under a state law in a manner volative of the Federal Constitution, he comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official

or representative character and is subjected in his person to the consequences of his individual conduct.

A judge's private, prior agreement to decide in favor of one party is not a judicial act. Although a party conniving with a judge to predetermine the outcome of a judicial proceeding may deal with him in his judicial capacity, the other partys expectation of judicial impartiality's actively frustrated by the scheme. It is the antithesis of the principled and fearless decision-making that judicial immunity exists to protect. Rankin v. Howard, 633 F. 2d 844 (9th Cir. 1980) cert. Denied, 451 U.S. 939, 101 S. Ct. 2020, (1981), Pierson v. Ray, 386 U.S. 547, 554, 87 S. Ct. 1213 (1967), and Gregory v. Thompson, 500 F. 2d 59 (9th Cir. 1974).

The United States Supreme Court has long recognized that judicial immunity does not protect judicial officers when the relief sought is injunctive and declaratory. Pulliam v. Allen, 466 U.S. 522, 1970. HEADS UP Congress has revised the law-In any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Applying the clear absence of all jurisdiction standard to judges of courts of limited jurisdiction (such as federal district courts) comports with the policy expressed in Bradley that where a court has subject matter jurisdiction over a particular controversy, the judge should be absolutely immune from a damages action stemming from his decision. It is clear that a judge who acts in the absence of subject matter jurisdiction may be held liable for his judicial acts. Stump v. Sparkman, 435 U.S. 349, 98 S. Ct. 1099, (1978), Bradlely v. Fisher, 80 U.S. 335

(1872).

Where an individual official would be expected to know that certain conduct would violate statutory or constitutional rights he should be made to hesitate. Harlow v. Fitzgerald, 102, S. Ct. at 2739 and Scott v. Dixon 720 F. 2d 1542 (11th Cir. 1983). Where judge presumes to exercise jurisdiction beyond understood boundaries, judge is not entitled to immunity. Dykes v. Housemann, 743 F. 2d 1488 (11th Cir. 1984).

A judges private, prior agreement to decide in favor of one party is not a judicial act. Lopez v. Vanderwater, 620 F. 2d 1229 (7th Cir. 1980). If a court lacks jurisdiction over a party, then it lacks jurisdiction to adjudicate that party's rights, whether or not the subject matter is properly before it. Kulko v. Superior Court, 436 U.S. 84, 98 S. Ct. 1690 (1978). Ex parte proceeding would be a flagrant violation of due process, rendering any order null and void.

In re: Wellman, 3 Kan. App. 100, 45 P. 726, (1896). When want of jurisdiction is known to the judge, no excuse is permissible. Turner v. Raynes, 611 F. 2d 92, (5th Cir. 1980). Willful misconduct in office or willful and persistent failure to perform his official duties by a judge of the United States shall constitute conduct inconsistent with the good behavior required by article III of the Constitution and shall be cause for the removal of that judge.

When judges act when they do not have jurisdiction to act, or the enforce a void order (an order issued by a judge without jurisdiction), they become trespassers of the law, and are engaged in treason (see below).

The Court in Yates v. Village of Hoffman Estates, Illinois, 209 F. Supp. 757

(N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function...it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse." When a judge acts as a trespasser of the law, when a judge does not follow the law, the judge loses subject-matter jurisdiction and the judges' orders are void, of no legal force or effect.

The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States. "By law, a judge is a state officer. The judge then acts not as a judge, but as a private individual (in his person)." The Illinois Supreme Court has held that "if the magistrate has not such jurisdiction, then he and those who advise and act with him, or execute his process, are trespassers." Von Kettler et. at. v. Johnson, 57 Ill. 109 (1870).

Under Federal law, which is applicable to all states, the U.S. Supreme Court stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers." Elliot v. Piersol, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828). The Illinois Supreme Court held that if a court "could not hear the matter upon the jurisdictional paper presented, its finding that it had the power can add nothing to its authority, - it had no authority to make that finding." The People v. Brewer, 128 Ill. 472, 483 (1928).

The judges listed in all above-mentioned cases had no legal authority (jurisdiction) to hear or rule on certain matters before them. They acted without

any jurisdiction.  When judges act, when they do not have jurisdiction to act, or they enforce a void order (an order issued by a judge without jurisdiction), they become trespassers of the law, and are engaged in treason.

### Facts of Case

Relators state that this action commenced when Relators, believing all notes had been paid, requested an accounting and bringing forward of the Promissory Note, none was produced. Several more attempts for a response were made to the Mortgage Company holding the Promissory Note.  After several months with no response, a letter was sent to the Mortgage Company stating that until verification has been established, of monies paid and monies owed on the account, by an accountant and the Original Promissory Note produced, no more payments would be made as Relators believed none was owed the Mortgage Company.

Suit was filed by MILLSAP & SINGER, on behalf of WELLS FARGO BANK.  Since no discovery was allowed, Relators still have no knowledge of how WELLS FARGO BANK, COUNTRYWIDE HOME LOANS, INTERVALE MORTGAGE and MILLSAP & SINGER, own the mortgage.  To Date we have seen no transfers of the Original Promissory Note.  The presiding judge was RUSSELL STEELE who refused Relators discovery, trial by jury, and copy of record, Case # CV105-169CC, Date October 17, 2005, then turned a hearing into a Summary Judgment against Relators.

Relators state that when a judge breaks the law through conspiracy,

collusion, tort, forceful contract of perjury of oath, or surrender of the Constitution to a Foreign State/Power, is constructive treason, by willful denial of rights afforded Relators by both Constitutions, State and Federal, will lose jurisdiction over the case before the court, making all judgments void: Title 28 U.S.C. Sec. 454, and 455; now becomes a Respondent and incorporated into the case for conspiracy by neglecting on October 17, 2005 to yield to Patsy Lee Martens, demand for Trial by Jury, discovery relating to the Promissory Note with accounting of monies paid, and monies owed, acceptance of fraudulent Deed of Trust, and transcript of hearing of October 17, 2005. See. <u>Exhibit 3.</u> On December 29, 2005 Respondent ruled without Trial by Jury or awarding Relators discovery and without record on file relating to the October 17, 2005 hearing.

Relators respectfully informs the Court that the Relators are sovereign citizens of the Missouri Republic, that Relator prosecutes this cause for and on behalf of the state of Missouri: that respondent RUSSELL STEELE is a judicial corporation duly organized and existing under the laws of the State of Missouri; that at all times herein mentioned the respondent has done business and exercised its corporate franchise within the State of Missouri in accordance with its incorporation under the laws of Missouri.

Respondent, RUSSELL STEELE, has in the conduct of his business acted in <u>violation of his oath,</u> to uphold the Constitution of Missouri Republic and Constitution of the United States of America by the following violations:

1. Constitution of Missouri: Article 1 (Bill of Rights) Sec. 22 (a). Right of trial by jury-That the Right of trial by jury as heretofore enjoyed shall

remain inviolate;

2. **United States of America Constitution Amendment VII; In suits at
common law** where the value in controversy shall exceed twenty dollars, the
right of trial by jury shall be preserved, and no fact tried by a jury shall be
otherwise be re-examined in any court of the United States, than according to
the rules of <u>common law.</u>

3. **Discovery**-When discovery was demanded as to the existence of a
Promissory Note the judge refused discovery and accounting by a competent
person of the Bank. This is to say that the accuser is correct and proof of its
correctness is incontrovertible. Thereby guilty until proven innocent.

4. When I, Jacob-Franz: Dyck, Trustee, demanded to have a copy of the
transcript on purported day judgment was rendered; the Court Recorder
told me "Judge STEELE ordered me not to keep the record. His reason was
no evidence was entered in the court, just oral argument." See <u>Exhibit 2.</u>
Also see Affidavit and note written by George Martens quoting phone call
from Court Recorder. See <u>Exhibit 5.</u>

5. Deed of Trust, which was the instrument by which the suit was filed, is a
fabrication of the lawyer who created it. This can be seen in <u>Exhibit 3</u> letter
from purported trustee.

6. Judge RUSSELL STEELE gave the property to the Sheriff who sold it on
the courthouse steps. Whereby, only certain people (Mortgage Process
Institution) were allowed to bid. After the biding, Sheriff, did not allow
Relator Jacob-Franz: Dyck and others to view the transfer of money. When

people voiced their objection to this act of exclusion of the people, the Sheriff moved this part of the sale inside the courthouse with numerous (6+) deputies keeping people from observing the transfer. This entire action was void because the judgment was void.

7. The Respondent knew the Constitution of the United States laws were correct as sworn by the Oath or Affirmation contract, then acted with the acts stated herein, by the definition of Titles, Blacks law dictionary and the United States Codes and the Laws of Contract. The Respondent should have practiced the law with the skill and care and diligence in the examination by the case incorporated, the Respondent should have discovered the defect, but the Respondent was guilty of such want of care, skill and diligence in the examination of Relator's rights and in advising Relators in the case incorporated. Relators were misled as no disclaimer of responsibility before the Respondent court proceedings were by beginning and Relators did not sign Constitutional rights away by the true intent of the facts stated in this cause shown by Relators.

## Prayer

Relators further inform the Court that, by reason of the omissions, Respondent has grossly and willfully abused and misused his corporate franchise granted by the State of Missouri and that, because of such abuse and misuse, the rights and privileges of Respondent to and under the franchise should be withdrawn and Respondent ousted from the franchise and the void judgment made by Respondent should be voided by this court.

**THEREFORE, Relators** pray that due process of law may issue against Respondent and that, on final hearing and determination of this cause, Respondent be ousted from its corporate franchise granted by the State of Missouri, and for such other and further relief that the court may deem just.

I am not an expert in the law; however, I know right from wrong. If there is any human being damaged by any statement herein, if he will inform me by facts I will sincerely make every effort to amend my ways. I hereby and herein reserve the right to amend and make amendments to this document as necessary in order that the truth may be ascertained and proceedings justly determined. If the parties given notice by means of this document have information that would controvert and overcome this affidavit, please advise me in written affidavit form within the allotted time (21 days) from receipt hereof providing me with your counter affidavit by all requisite actual evidentiary fact and all requisite actual law, and not merely the ultimate facts or conclusions of law, that this affidavit statement is substantially and materially false sufficiently to change materially my status and factual declarations. Your silence stands as consent to, and tacit approval of, the factual declarations herein being established as fact as a matter of law. May the will of our Heavenly Father through the power and authority of the blood of his Son be done on earth as it is in Heaven.

October 4, 2006

By: Patsy Lee Martens
32316 Twin Oaks Lane
Brashear, Missouri 63533

By: George Allen Martens

**RUSSELL STEELE**
**Adair County Courthouse**
**Kirksville, MO 63501**

**TRIAL BY J URY**
**DEMANDED   Rule 38 FRCP**

By: Jacob-Franz: Dyck
3000 Green Mountain Dr
100-417
Branson, MO 65616

The minute you receive any affidavit, it is recorded. Should you refuse to record My affidavits, once deposited with you, you are committing a crime against justice under Statutes at Large Sec. 5403 and it is punishable by up to a $2000 fine and 3 years imprisonment. If your state, county, or city attorney told you not to file any documents like mine, you are still responsible, as I do not accept any third party intervenes. Any attorney, district attorney, or anyone from the lawyering craft are all third parties and do not have a license to make a legal determination in this matter as they do not represent Me and you, the state, county, or city court clerk, do not have the authority to represent Me.

## Title LXX. — CRIMES. — CH. 4. CRIMES AGAINST JUSTICE

### (Destroying, &c., public records.)

**SEC. 5403.** Every person who willfully destroys or attempts to destroy, or with intent to steal or destroy, takes and carries away any record, paper, or proceeding of a court of justice, filed or deposited with any clerk or officer of such court, or any paper, or document, or recorded filed or deposited in any public office, or with any judicial or public officer, shall, without reference to the value of the record, paper document, or proceeding so taken, pay a fine of not more than two thousand dollars, or suffer imprisonment, at hard labor, not more than three years, or both: [See § §. 5408, 5411, 5412.1]

## Title LXX. — CRIMES. — CH. 4. CRIMES AGAINST JUSTICE

### (Conspiracy to defeat enforcement of the laws.)

**SEC. 5407.** If two or more persons in any State or Territory conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws, each of such persons shall be punished by a fine of not less than five hundred nor more than five thousand dollars, or by imprisonment, with or without hard labor, not less than six months nor more than six years, or by both such fine and imprisonment. See § § 1977-1991, 2004-2010, 5501.1-5506

## Title LXX. — CRIMES. — CH. 4. CRIMES AGAINST JUSTICE

### (Destroying record by officer in charge)

**SEC. 5408.** Every officer, having the custody of any record, document, paper, or proceeding specified in section fifty-four hundred and three, who

*Exhibit S*
*Page 192*

fraudulently takes away, or withdraws, or destroys any such record, document, paper, or proceeding filed in his/her office or deposited with him/her or in his/her custody, shall pay a fine of not more than two thousand dollars, or suffer imprisonment at hard labor not more than three years, or both-, and shall moreover, forfeit his/her office and be forever afterward disqualified from holding any office under the Government of the United States.

Exhibit S
Page 292

# AFFIDAVIT OF FACTS

I George Allen Martens, am of legal age and am sound body and mind; have knowledge of the facts to be true and correct in substance and fact as stated herein:

1. **That I did not sign the promissory note on March 15th, 2004 at the Pickell** Abstact Co.

2. On the morning of June 8, 2006 I received a call from a person who identified herself to be Becky Childress, Recorder for Circuit Court on October 17th, 2005; Mrs. Childress told me **"that there no court records on file because no evidence was presented, just oral arguments"**.

3. I make this Affidavit based on my own personal knowledge and if called as a witness would testify as stated herein.

Further sayeth Affiant not.

By: *George Allen Martens*
    George Allen Martens
    32316 Twin Oaks Lane
    Brashear, Missouri 63533

**Jurat**

*Connie W. Viscarra*

*Exhibit 2*
*Page 1 of 2*

No Count-Records
on File

Because No Evidence
was Presented Just
oril aurgament

Leonand Clark

~~XX~~    ~~XXX~~
665 2761
Office  665 4644

Copy of Note Taken
morning  (June 8) of the
sale.

Exhibit 2
Page 2 of 2

THE LAW FIRM OF

# SWANSON • MIDGLEY • LLC

Founded in 1886

Crown Center
2420 Pershing Rd., Ste. 400
Kansas City, MO 64108-2505
Telephone: 816-842-6100
FAX: 816-842-0013

Plaza Pointe
4747 West 135th Street, Ste. 400
Leawood, KS 66224
Telephone: 913-239-2360
Fax: 913-239-2362

April 2, 2004

Ms. Patsy Martens
32316 Twin Oakes Lanes
Brashear, MO 63533-2507

RE:    Decision One Mortgage Co., LLC/Land in Sec. 26, T62, R14, Adair County, Missouri

Dear Ms. Martens:

Several days ago I received a document by Federal Express from you. I enclose a copy of the document.

I have no information about you, the land, or a promissory note or mortgage in favor of Decision One Mortgage Co.

I assume from the information you sent to me, I was named as trustee in a Deed of Trust that appears in a record of the title of the property located at 32316 Twin Oakes Lanes, however I have no record or recollection of being named. That is not unusual because many times I am named as trustee without my knowledge in deeds of trust because I am an attorney and a resident of Missouri.

I do not intend to take any action regarding this matter and disclaim any obligation to do so.

Very Yours Truly,

James H. McLarney

JHM/smt
Enclosures

Exhibit 3

*Member of Meritas with Law Firms Worldwide*